**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Robert Chancellor, M.D., | 2:15-cv-01707-JAD-PAL |
| Plaintiff | **Order Granting in Part Defendants' Motion for Judgment on the Pleadings, Dismissing Remaining State-law Claims, and Closing Case** |
| v. | |
| Richard Legarza, et al., | [ECF No. 17] |
| Defendants | |

Dr. Robert Chancellor sues several current and former members and employees and the general counsel of the Nevada Board of Medical Examiners (the Board) under the federal Racketeer Influenced and Corrupt Organizations (RICO) act,[1] Nevada's civil RICO statute,[2] and also for fraud, breach of contract, defamation, abuse of process, and negligence.[3] The defendants now move for judgment on the pleadings, arguing, among other things, that Chancellor's federal RICO claim, which is the sole basis for federal subject-matter jurisdiction in this non-diverse case, is time barred. Defendants argue that, upon adjudicating that claim against Chancellor, I should also decline to exercise supplemental jurisdiction over Chancellor's remaining state-law claims.[4] Chancellor responds that dismissal on statute-of-limitations grounds is proper only if the liberally read allegations in the complaint would not permit him to prove that the statute could be tolled,[5] and that I have discretion to retain supplemental jurisdiction over his state-law claims even if I dispose of his federal RICO claim.[6]

---

[1] 18 U.S.C. § 1961, et seq.

[2] NEV. REV. STAT. § 207.350, et seq.

[3] *See generally* ECF No. 7.

[4] ECF No. 17 at 12:16–13:22.

[5] ECF No. 29 at 5:2–6.

[6] *Id.* at 10:13–11:09.

I find that it is plain on the face of Chancellor's first amended complaint that his federal RICO claim is time barred and that he has not alleged any facts that would allow me to toll the statute of limitations governing that claim. I therefore grant the defendants' motion for judgment on the pleadings as to Chancellor's federal RICO claim. And because Chancellor has not demonstrated—and I do not find—that the interests of economy, convenience, fairness, or comity would be served if I retained jurisdiction over Chancellor's remaining, state-law claims, I decline to retain supplemental jurisdiction over them, dismiss those claims without prejudice, and instruct the Clerk of Court to close this case.

**Background**

In the spring of 1998, the Board charged Chancellor with substance abuse and three counts of medical malpractice.[7] Nearly a year later, Chancellor stipulated to the substance-abuse charge, and the Board revoked his medical license.[8] In exchange for Chancellor acknowledging that he was guilty of substance abuse, entering a three-month rehabilitation program, and successfully completing the Board's diversion program, the Board allegedly dismissed the three counts of medical malpractice.[9] According to Chancellor, the stipulation prohibited the Board from using the medical-malpractice charges against him or to comment to others about them.[10]

Chancellor claims that he completed the rehabilitation program in August 1999 and the diversion program in mid-2007,[11] but that the Board breached its obligations under the stipulation and, from 1999 to 2014, actively interfered with his ability to regain a full and unrestricted medical license.[12]

---

[7] ECF No. 7 at ¶ 6–13.

[8] *Id.* at ¶¶ 14–17.

[9] *Id.*

[10] *Id.* at ¶ 14.

[11] *Id.* at ¶ 15.

[12] *See id.* at ¶¶ 16–40.

According to Chancellor, the pattern of conduct began when the Board's general counsel insisted that Chancellor's license be revoked rather than merely suspended.[13]  Chancellor contends that suspension is the typical punishment for substance-abuse charges.  Next, the Board's president discussed the medical-malpractice claims with the media and provided the media with a copy of the stipulation, which Chancellor claims was confidential.[14]

In 2000, the Board provided a copy of the dismissed medical-malpractice charges to the American Board of Otolaryngology (ABO), thus placing Chancellor's certification with that board at risk.[15]  When the president of the Board's diversion program wrote a letter to the ABO clarifying that substance abuse, not medical malpractice, was the reason that Chancellor's license was revoked and recommended that Chancellor's license be reinstated, the Board retaliated by firing Chancellor's champion, which resulted in that man being unable to testify on Chancellor's behalf at his first reinstatement hearing.[16]

The Board did not reinstate Chancellor's license following that hearing; but instead it required him to pass "the Special Exam" that is necessary "for general medical competency for physicians applying for licensure when it had been more than ten years since taking another qualifying exam."[17]  Chancellor passed the exam in September 2000 and reapplied for reinstatement of his license.[18]  But the Board refused to reinstate his license following hearings that it conducted in March, June, and September 2001, citing the dismissed medical-malpractice charges as the reason.[19]

---

[13] *Id.* at ¶ 16.

[14] *Id.* at ¶ 17.

[15] *Id.* at ¶ 18.

[16] *Id.* at ¶¶ 20–21.

[17] *Id.* at ¶ 22.

[18] *Id.* at ¶¶ 23–24.

[19] *Id.* at ¶ 25.

Following a hearing in 2002, the Board issued Chancellor a five-year-diversion-program license that was good until 2007 and subject to specific restrictions like limiting his practice to ear, nose, and throat (ENT) medicine, requiring that he be supervised by a physician licensed by the Board, and precluding Chancellor from performing surgery and from practicing medicine at night.[20]  These restrictions made it very difficult for Chancellor to obtain a supervisor that the Board would approve,[21] and he unsuccessfully moved seven times to have the restrictions lifted.[22]

When the Board denied Chancellor's eighth request to lift the restrictions in the spring of 2005, it instead proposed that, because of Chancellor's prolonged absence from medicine, he participate in a mini-residency option that "would have allowed [him] to refresh his skills in the surgical aspect of his speciality."[23]  But there was no such program in Nevada, Chancellor did not have an unrestricted license that would allow him to participate in a program in another state, and the Board denied Chancellor's request to observe surgery and participate in training and educational activities at his former residency program at UCLA.[24]

The Board eventually removed the restriction limiting Chancellor to the practice of ENT medicine and approved a plan for him to be supervised in surgery as well as in medical practice. These changes would have allowed Chancellor to obtain the hospital privileges from UMC that were necessary for him to work under his Board-approved supervisor.[25]  But his efforts to do so were stymied when someone from the Board falsely told the UMC medical-staff

---

[20] *Id.*

[21] *Id.* at ¶¶ 26–27.

[22] *Id.* at ¶ 28.

[23] *Id.* at ¶ 30.

[24] *Id.* at ¶ 31.

[25] *Id.* at ¶ 33.

manager that Chancellor's Board-approved supervisor had withdrawn.[26]  And it was not until January 2008 that the Board's general counsel cured that misunderstanding.[27]

Chancellor alleges that the Board's final act in furtherance of prohibiting him from obtaining full licensure occurred during a February 2014 telephone conversation that he listened to via speaker phone when the chief of licensing for the Board attempted to dissuade another doctor from supervising Chancellor by suggesting that he "had 'a long history of problems.'"[28] The Board finally reinstated Chancellor's full medical license without restrictions in September 2014.[29]  Chancellor filed this lawsuit a year later.[30]

### Discussion

**A.    Judgment on the pleadings standard**

"[J]udgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law."[31]  The moving party bears the burden of establishing that, "on the face of the pleadings, no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."[32]  In order to adjudicate a claim as time barred under FRCP 12(c), the running of the statute of limitations must be "apparent on the face of the complaint."[33]

---

[26] *Id.* at ¶ 34.

[27] *Id.* at ¶ 35.

[28] *Id.* at ¶ 39.

[29] *Id.* at ¶ 40.

[30] *See* ECF No. 1.

[31] *U.S. v. Teng Jiao Zhu,* 815 F.3d 639, 642 (9th Cir. 2016).

[32] *Hal Roach Studios Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1989).

[33] *Huynh v. Chase Manhattan Bank,* 465 F.3d 992, 997 (9th Cir. 2006).

1

2

**B.     It is apparent on the face of Chancellor's first amended complaint that his federal RICO claim is time barred.**

3       The statute of limitations for federal civil RICO claims is four years.[34]  RICO claims

4  "accrue[ ] when [the plaintiff] has actual or constructive knowledge of the fraud"[35] and not until

5  all of the elements of that claim exist: (1) conduct (2) of an enterprise (3) through a pattern (4) of

6  racketeering activity (predicate acts) that (5) causes injury to the plaintiff's "business or

7  property."[36]

8       To determine when a civil RICO claim accrues in the Ninth Circuit, courts apply both the

9  injury-discovery and the separate-accrual rules.[37]  Under the injury-discovery rule, "the

10 limitations period begins to run when the plaintiff knows or should know of the injury which is

11 the basis for the action."[38]  This rule "encourages diligence in RICO prosecutions and insures that

12 evidence remains fresh."[39]  The "separate accrual rule" provides "that a new cause of action

13 accrues for each new and independent injury, even if the RICO violation causing the injury

14 happened more than four years before."[40]

15      The first overt act and resulting injury in this case allegedly occurred in 1999 when

16 defendant Richard Legarza, then general counsel for the Board, refused to stipulate to suspend

17 Chancellor's license, insisting on revoking it instead.[41]  Chancellor believes that, because he was

18 admitting to the substance abuse in exchange for the dismissal of the medical-malpractice claims,

19

20 [34] *Grimmett v. Brown*, 75 F.3d 506, 511 (9th Cir. 1996).

21 [35] *Id.* at 510.

22 [36] 18 U.S.C. § 1964.

23 [37] *Grimmett*, 75 F.3d at 510–11.

24 [38] *Id.*

25 [39] *Id.* at 511.

26 [40] *Id.* at 510.

27

28 [41] *See* ECF No. 7 at ¶ 16.

1  his license should have merely been suspended.[42]  He suspects that he was given a raw deal

2  because he refused to provide inculpatory information about the alleged malpractice of the owner

3  of his previous workplace.[43]  The next act and resulting injury occurred the same year when

4  members of the Board discussed and provided a copy of Chancellor's stipulation to members of

5  the media.[44]  The third act occurred in March 2000 when the Board sent a copy of the dismissed

6  medical-malpractice charges to the ABO and fired Chancellor's would-be champion for

7  reinstatement.[45]

8          These allegations constitute a pattern of behavior.  The injuries that Chancellor alleges he

9  suffered as a result are the loss of his medical license, harm to his reputation, and lost income

10  (both present and future).[46]  But because it is clear from Chancellor's allegations that he knew

11  about these acts and his resulting injuries when they occurred (which was between 15 and 16

12  years before Chancellor filed his complaint) in order for his federal civil RICO claim to be

13  timely, he must have either new and independent injuries that qualify as new causes of action

14  under the separate-accrual rule, or facts that allow him to prove that the statute of limitations

15  should be tolled.  Chancellor has neither.

16          The statute of limitations restarts each time that there is a "*new and independent act* that

17  is not merely a reaffirmation of a previous act" and that "inflict[s] *new and accumulating injury*

18  on the plaintiff."[47]  Chancellor alleges that between 2001 and 2014, there were at least seven

19  other overt acts—attempts by various members of the Board to prevent him from acquiring the

20

21  _____

22  [42] *Id.* at ¶ 10.

23  [43] *Id.*

24  [44] *Id.* at ¶¶ 16–17.

25  [45] *Id.* at ¶¶ 18–21.

26  [46] *Id.* at ¶ 64.

27  [47] *Grimmett*, 75 F.3d at 513 (quoting *Pace Indust., Inc. v. Three Phoenix Co.*, F.2d 234, 238 (9th

28  Cir. 1987)).

1   supervision that he needed in order to complete the Board's diversion program and thus regain

2   full licensure.[48]  But the subsequent acts alleged by Chancellor were merely reaffirmations of the

3   initial act of revoking his medical license until he fully complied with the Board's diversion

4   program.  Those acts do not qualify as new and independent causes of action under Ninth Circuit

5   authority because none of them inflicted a new and accumulating injury on Chancellor: the

6   injuries that Chancellor suffered with each subsequent act—loss of unrestricted medical license,

7   harm to reputation, and loss of income—each flowed naturally from the allegedly wrongful

8   revocation of his license in 1999.  It is clear from Chancellor's allegations that he knew that he

9   had suffered injuries and that all of the elements of his federal RICO claim existed as early as

10  2001 and no later than 2008.  Absent tolling, Chancellor thus had until 2012 at the latest to

11  timely file his federal RICO claim.  But he waited until September 2015.[49]

12          Chancellor attempts to hold onto his claim by arguing that it can be adjudicated under

13  FRCP 12(c) on statute of limitations grounds only if the liberally read allegations in the

14  complaint "would not permit [him] to prove that the statute [should be] tolled.[50]  "Equitable

15  tolling doctrines, including fraudulent concealment, apply in civil RICO cases."[51]  But

16  Chancellor does not identify any factual allegation in his first amended complaint that would

17  suggest that any tolling doctrine should apply, and I have not found any in my liberal reading of

18  his pleading.  Accordingly, I grant the defendants' motion for judgment on the pleadings in part

19  as to Chancellor's federal civil RICO claim.

20

21

22

23  [48] *Id.* at ¶¶ 25–40.

24  [49] *See* ECF No. 1.

25  [50] ECF No. 29 at 5:2–6 (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir.

26  1993)).

27  [51] *Grimmett v. Brown*, 75 F.3d at 514 (citing *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1199

28  (9th Cir. 1988)).

**C.    I decline to exercise supplemental jurisdiction over Chancellor's remaining state-law claims.**

Adjudicating Chancellor's federal RICO claim in the defendants' favor leaves only his state-law claims, over which I have been exercising supplemental jurisdiction.[52]  Supplemental jurisdiction is not a right but a doctrine of discretion.[53]  A federal judge may decline to exercise supplemental jurisdiction over state-law claims if all other claims that gave the district court subject-matter or original jurisdiction have been dismissed.[54]  My decision is informed by economy, convenience, fairness, and comity.[55]

"In the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."[56]  This is a usual case: it has not been extensively litigated in this court, discovery has been stayed pending my decision on this motion,[57] and there was only one claim securing federal jurisdiction.  Although Chancellor asks me to retain supplemental jurisdiction over his state-law claims, he offers no argument for why it would be convenient, economical, fair, or consistent with the notions of comity for me to do so.  Based on my consideration of those factors, I decline to exercise supplemental jurisdiction over Chancellor's remaining claims, and I dismiss them without prejudice under 28 U.S.C. §1367(c)(3).[58]

---

[52] 28 U.S.C. §1367(c)(3).

[53] *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 172 (1997); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

[54] *See* 28 U.S.C. §1367(c).

[55] *Acri v. Varian Assoc., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc).

[56] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

[57] ECF No. 28.

[58] Because the claim that I have original jurisdiction over is time barred and I decline to exercise supplemental jurisdiction over Chancellor's state-law claims, I do not address the defendants' arguments that Chancellor's state-law claims should also be adjudicated on the pleadings.

**Conclusion**

Accordingly, with good cause appearing and no reason to delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that **Drennan Clark, Louis Ling, Richard Legarza, Larry Lessly, Joel Lubritz, and Lynnette Daniels's motion for judgment on the pleadings [ECF No. 17] is GRANTED as to Robert Chancellor's first claim (alleging violations of the federal RICO act) and DENIED without prejudice as to Chancellor's remaining claims.**

Because I decline to exercise supplemental jurisdiction over Chancellor's remaining state-law claims for violations of Nevada's civil RICO statute, defamation, fraud, abuse of process, negligence, and breach of contract, those claims are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

The Clerk of Court is directed to enter **JUDGMENT** on Chancellor's first claim for violations of the federal RICO act in favor of defendants Clark, Ling, Legarza, Lessly, Lubritz, and Daniels and against Chancellor, and to **CLOSE THIS CASE**.

DATED: July 14, 2016

Jennifer A. Dorsey
United States District Judge